Robert J Vanden Bos, OSB #78100
VANDEN BOS & CHAPMAN, LLP
319 S.W. Washington, Suite 520
Portland, Oregon 97204
TELEPHONE: (503) 241-4869
FAX: (503) 241-3731

    Of Attorneys for Debtor-in-Possession

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | ) Case No. 09-34880-elp11 |
| | ) |
| Teufel Nursery, Inc., | ) DECLARATION OF LAWRENCE A. TEUFEL IN |
| | ) SUPPORT OF DEBTOR'S MOTION FOR |
| | ) INTERIM ORDER AUTHORIZING USE OF |
| | ) CASH COLLATERAL REGARDING ASSET |
| | ) VALUES AND POSSIBLE EROSION OF |
| Debtor-in-Possession. | ) COLLATERAL VALUES |

    I, Lawrence A. Teufel, declare and testify that I am President of Teufel Nursery, Inc., the Debtor-in-Possession ("Teufel" and/or "Debtor") and have been employed as such for 20 years.

    I began working in my family's nursery business at the age of 14. I am familiar with every aspect of Teufel's business operations including, but not limited to, its accounts receivable, accounts payable, inventory, plants, equipment and its maintenance division. I have personal, first-hand knowledge of the entire contents of this declaration and, if called upon to do so, could and would competently testify thereto.

### VALUATION OF TEXTRON'S COLLATERAL

    For purposes of this cash collateral hearing, below are my estimates of the value of

Page 1 of 12 -   DECLARATION OF LAWRENCE A. TEUFEL SUPPORT OF DEBTOR'S MOTION FOR INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL REGARDING ASSET VALUES AND POSSIBLE EROSION OF COLLATERAL VALUES

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

the relevant collateral components which secure Teufel's obligations to Textron Financial Corporation ("Textron"). In some cases, I do not express an opinion of value but have chosen, for purposes of this hearing only, to accept the values which have been offered by Textron.

1. **Cash**. As of August 21, 2009, Debtor's cash on hand was $92,027.00.

2. **Real Estate**.

    2.1 <u>Market Value</u>. For purposes of this hearing, Teufel accepts the midpoint value between the Moscato, Ofner & Henningsen (Brett Okoneski) appraisal and the PGP Valuation, Inc. (Donald R. Palmer) appraisal, which would result in a fair market value of $9,580,000. I have reviewed both appraisals. My opinion is that the value is not less than the PGP appraisal, but for purposes of evaluating the Debtor's motion for cash collateral only, I am willing to utilize the midpoint value between the two appraisals. After deducting for Jeffery Morse's costs of liquidation ($900,000) and the first lien of Umpqua Bank ($3,300,000), the net recoverable value of the real estate is $5,380,000.

    2.2 <u>Quick Sale</u>. The real estate owned by Teufel Holly Farms, Inc. has been in the family corporations for more than 100 years. I am intimately familiar with the real estate. Over the course of many years, potential buyers have presented offers for the purchase of the real estate. My opinion is that the value of the real estate has declined in the last three years as has other real estate in the Portland market. However, this is a prime piece of undeveloped land and is the largest piece of undeveloped residential land left in the city of Portland. It is accessible from downtown Portland in less than 10 minutes. I still today get approached by prospective buyers. In my opinion, it is not reasonable to market this property within 90 days, as there would be too great a risk of loss of potential

Page 2 of 12 -   DECLARATION OF LAWRENCE A. TEUFEL SUPPORT OF DEBTOR'S MOTION FOR INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL REGARDING ASSET VALUES AND POSSIBLE EROSION OF COLLATERAL VALUES

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

value.  However, even in a quick sale, the property has a value of not less than the fair market value.

    3.    **Equipment**.  For purposes of this hearing only Teufel will not challenge the net liquidation value of the Pahl appraisal for the equipment and vehicles, which is $852,875.

    4.    **Inventory**.   I have reviewed the inventory appraisal performed by Rachel G. Wills.  In addition, I have first hand knowledge from my own inspections of the inventory as to the quantity, type and condition of the inventory.  I am familiar with the cost of the inventory.  Based on my experience, I agree with Ms. Wills' valuation of the inventory of $3,799,738 with a liquidation value of $2,244,999.  I had previously testified in deposition that the liquidation value of the inventory was $1,600,000.  The Wills' report produces a higher valuation than my estimate, and I concur that the Wills report valuation of $2,244,999 is a more accurate, up to the minute liquidation value for the plant inventory.

    5.    **Maintenance Division**.  I believe the value is not less than $5,500,000.

    6.    **Accounts Receivable**.

    6.1    I am very familiar with the circumstances of each of the Accounts Receivable of Teufel.  I am familiar with the identities of the customers who owe the obligations.  Teufel has in the ordinary course of its business sent a notice of intent to lien at the time each landscape construction contract is executed.  I therefore state that Teufel has preserved its lien rights with respect to all of the Type 2 accounts identified in the Brian Allen analysis (Type 2 being those accounts that are less than 90% complete).  I am familiar with the Type 2 projects on which the work has been performed.  If Teufel is not paid, Teufel will file liens on those projects. The projects all have sufficient value for 100%

Page 3 of 12 -   DECLARATION OF LAWRENCE A. TEUFEL SUPPORT OF DEBTOR'S MOTION FOR INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL REGARDING ASSET VALUES AND POSSIBLE EROSION OF COLLATERAL VALUES

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

collection of the liens filed. It is ordinary course of business for Teufel's accounting department to call each customer after monthly billing invoices have been mailed to verify the invoices have been received and to determine if a customer has any issues with the invoice. That procedure was followed with respect to the outstanding invoices shown on the Accounts Receivable aging. Teufel has no notice from any customer of any legal or factual basis for disputing the amounts owed. I therefore state that the amounts are 100% owing to Teufel.

   6.2 Under my supervision, an analysis was done to determine what claims for damages might be legitimately asserted against Teufel if the jobs were terminated. This analysis involved comparing the amount of work to be performed against the cost of completion, if Teufel were to abandon a job and the owner put the work up for bid on the market. Currently, the margin used in the landscape industry is between 20 to 25%. It is not uncommon for landscape jobs to be performed by subcontractors. The subcontractors will bid the job at their estimated completion costs, plus a reasonable margin, which currently runs in the range of 20% to 25%. With few exceptions, there is at least a 20% margin remaining in the work to be completed on the Teufel jobs. Therefore, I would state that in an orderly liquidation if Teufel did not choose to complete a job itself, it would be relatively simple for me to sub the jobs out to other firms for completion. An orderly liquidation would essentially eliminate any claims of offsets by the owners. Even in a forced liquidation, if the owners put the unfinished jobs up for bid on the current market, my opinion is that the owners will likely get a replacement contractor to perform the remaining work for the same or less than what they would have to pay Teufel to complete the job. The exposure for offsets for jobs where the cost to complete exceeds the remaining unpaid contract balance

Page 4 of 12 -   DECLARATION OF LAWRENCE A. TEUFEL SUPPORT OF DEBTOR'S MOTION FOR INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL REGARDING ASSET VALUES AND POSSIBLE EROSION OF COLLATERAL VALUES

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

is less than $75,000. I therefore do not believe that there should be any significant reduction in the value of the accounts receivable for potential offsets for completing the jobs when the receivables are valued.

6.3     I have reviewed Brian Allen's evaluation of the receivables. Mr. Allen has made an incorrect double deduction for the potential liens/joint checks. The lien adjustment must be made prior to the discounts for collection issues. In the Type 2 receivables, Mr. Allen indicates a reduction of 75% for the risk of noncollection of certain categories of the receivables. If, for example, $100,000 of a receivable with the lien adjustment classification is left in the gross amount subject to the 75% reduction, the receivable will be debited by $75,000 in Mr. Allen's analysis. This would leave a net collectible receivable of $25,000. However, since Mr. Allen subtracts the lien adjustments after making the percentage deductions, he would then subtract the hundred thousand dollars again as the separate lien adjustment, effectively deducting $175,000 from the gross for a $100,000 receivable, which overstates the deduction by $75,000. I have recalculated the chart to prorate the lien/joint checks between the Type 1 and Type 2 and subtracted those amounts from the gross receivables, prior to applying percentage discounts for risk of non-collection.

6.4     My analysis is that when the double deduction on the receivables is eliminated, but using Brian Allen's analysis for all other purposes, the net collectible receivables for Brian Allen's "low" category are $2,446,547, not $1,675,299 as indicated in the Allen report. Attached is a chart marked **Exhibit A** showing the correct analysis.

6.5     In my opinion, the true value of the Teufel Accounts Receivable is higher than the numbers in Brian Allen's report. In my opinion, because of Teufel's ability

Page 5 of 12 -   DECLARATION OF LAWRENCE A. TEUFEL SUPPORT OF DEBTOR'S MOTION FOR INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL REGARDING ASSET VALUES AND POSSIBLE EROSION OF COLLATERAL VALUES

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

to file liens to enforce collection of the amounts owing to it, and because of the ability to largely sub out the remaining work and/or because the job owners or general contractors will largely succeed in finding a replacement contractor at the same or lower cost to complete than the amounts owing to Teufel for completing the job, there should be limited reductions of the accounts receivable due to the owner offset issue. In my opinion, Teufel should easily be able to collect 75% of the Type 2 receivables through the exercise of its lien rights. Therefore, in my opinion the liquidation value of Teufel's Accounts Receivable is $3,941,189. Teufel's historical collection rates, measured by its bad debt reserves and writeoffs, is less than 2%, so a 75% recovery rate for Type 2 receivables is a more accurate rate than 38% used by Mr. Allen.

  6.6 Attached to this Declaration is a chart marked **Exhibit B** showing the high value of Teufel's receivables calculated exclusively using the conclusions of Brian Allen, with the sole change being the elimination of the double production for the lien adjustments. The elimination of the doubled deduction raises Mr. Allen's conclusion by the sum of $604,525 to $3,056,648.

  6.7 Attached to this Declaration is a chart marked **Exhibit C**, which contains my valuation of the liquidation value of Teufel's Accounts Receivable, which is $3,941,189. My valuation is the same as Brian Allen's with only two changes as follows: I have eliminated the double deduction for the lien adjustments; and (2) I have increased the average collectability percentage of the Type 2 receivables from 38% used by Mr. Allen to 75%. These two changes result in raising Mr. Allen's high valuation by $1,489,066 to $3,941,189.

  6.8 I have reviewed Jeffery Morse's uncertified rough transcript of his

Page 6 of 12 - DECLARATION OF LAWRENCE A. TEUFEL SUPPORT OF DEBTOR'S MOTION FOR INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL REGARDING ASSET VALUES AND POSSIBLE EROSION OF COLLATERAL VALUES

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

deposition and note that Mr. Morse testified that he independently valued Teufel's receivables at $2.5 million, or slightly higher than the Allen low result ($2,446,547) after elimination of the double deduction for the lien adjustments.

7. **Summary**. In short, my summary of the liquidation values of Textron's collateral are as follows:

| DESCRIPTION | AMOUNT |
| --- | --- |
| Cash | $0.00 |
| Real Estate | $5,536,160.00 |
| Equipment | $852,875.00 |
| Inventory | $2,244,999.00 |
| Accounts Receivable | $3,941,189.00 |
| Maintenance Division | $5,500,000.00 |
| TOTAL: | $18,075,223.00 |

8. Textron's debt is approximately $5.3 million. The value of the collateral creates an "equity cushion" of approximately $12,775,000.

## EROSION OF COLLATERAL VALUES

In my opinion, the erosion of collateral values during the time of the requested use of cash collateral will not be a significant amount. I have determined the erosion to be as follows:

9. **Cash**. As of August 21, 2009, Teufel has on hand the approximate sum of $92,027 in cash. The projection is that this number would not significantly change as of September 28, 2009, but the worst that could happen would be to reduce the value of the cash to zero, or a potential loss of $92,027 of cash during the requested period of the use of cash collateral.

Page 7 of 12 - DECLARATION OF LAWRENCE A. TEUFEL SUPPORT OF DEBTOR'S MOTION FOR INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL REGARDING ASSET VALUES AND POSSIBLE EROSION OF COLLATERAL VALUES

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

10. **Real Estate**. Real estate does not depreciate. The real property taxes are current and are being paid by the Teufel Holly Farms, Inc. However, to the extent they are not paid, the real property taxes are approximately $26,000 per year, which would come to approximately $2,000 per month. Textron's appraiser has stated that if the Teufel Holly Farms, Inc. real estate is sold within 90 days, it would generate a sale price of $5,800,000 but if sold within one year, the sale price would be $9,660,000. Hence, the Debtor's collateral position would actually improve approximately $321,666 ($3,860,000 ÷ 12 = $321,666,000) per month because of the better odds of obtaining a better price if a longer marketing program is used for sale of the real estate. Under either analysis, there should be no consideration given to an erosion in Textron's collateral with respect to the real estate during the proposed period for the use of the cash collateral.

11. **Equipment and Vehicles**. Much of Teufel's equipment is fully depreciated and therefore does not significantly depreciate any longer. However, having accepted the value of Textron's appraisal for the equipment of $852,875 (based on my familiarity with equipment), I believe that the rate of depreciation would not exceed 10% per annum, or not more than $85,000 per year. This would translate into an erosion rate of approximately $7,100 per month for the equipment.

12. **Inventory**. Whenever inventory is sold, it converts to an account receivable. Therefore the mere sale of inventory, or the mere decline in the level of inventory, does not mean that there has been an erosion in the value of the Textron's collateral. In fact, the sale of inventory enhances Textron's collateral position, because the accounts receivable have more value than the raw inventory. With respect to the possibility of loss or destruction of inventory due to damage or disease, with the exception of Sudden Oak

Page 8 of 12 -  DECLARATION OF LAWRENCE A. TEUFEL SUPPORT OF DEBTOR'S MOTION FOR INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL REGARDING ASSET VALUES AND POSSIBLE EROSION OF COLLATERAL VALUES

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Death disease, the average experience of Teufel with loss of inventory due to disease or other natural causes has been historically less than 5% per year. Based on my familiarity with the existing inventory, I do not expect that the Debtor would experience a loss of any more than 5% of inventory per year due to disease or other loss. Previously, the Debtor grew and maintained a significant inventory of rhododendrons. It was recently discovered within the last four (4) years that rhododendrons were the carriers of Sudden Oak Death disease. The state of Oregon required the destruction of almost by $5,000,000 worth of inventory of rhododendrons owned between Teufel and Teufel Holly Farms, Inc. after the inventory tested positive as a carrier of Sudden Oak Death disease. After that experience, I decided that Teufel would not trade in any nursery stock that was susceptible to Sudden Oak Death disease or might be a carrier of Sudden Oak Death disease. All such inventory was eliminated long before the bankruptcy petition was filed. Therefore, there is no possibility of loss of inventory due to that particular disease anymore. Assuming an inventory valuation of approximately $2,444,999, the maximum loss to the inventory I would expect due to disease or other natural causes would be no more than $203,000 per year, or not more than approximately $16,979 per month.

13.    **Maintenance Division**. The landscape maintenance division of Teufel provides monthly maintenance services based on annual contracts to a large number of customers. The approximate average monthly billing in the maintenance division is $600,000 per month. My estimate of the value of the maintenance division, based on my knowledge of the industry, as well as based on my review of the report provided by Cogence Group, is that the maintenance division has a value of roughly $3,000,000 - $5,000,000. If the Debtor's use of cash collateral were to be terminated abruptly, there is a

Page 9 of 12 -  DECLARATION OF LAWRENCE A. TEUFEL SUPPORT OF DEBTOR'S MOTION FOR INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL REGARDING ASSET VALUES AND POSSIBLE EROSION OF COLLATERAL VALUES

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

risk that severe damage could result to the value of the maintenance division, as the customers would seek alternative sources for their weekly landscape maintenance needs. It is not inconceivable that the value of the business could decline to essentially nothing within two weeks of shutting down. The maintenance division is profitable so no erosion in the value of the maintenance division is projected from the use of cash collateral. In fact, the denial of use of cash collateral could only result in the potential for millions of dollars of damage due to the loss value of the maintenance division.

14. **Accounts Receivable**. Based on Teufel's current sales volumes, Teufel is roughly replacing collected accounts receivable with the same amount of new receivables generated from work performed on a month-to-month basis. I therefore do not expect any significant decline in the level of accounts receivable during the period of time requested for the use of cash collateral. Teufel significantly restructured its operations and has been operating at a slight profit for approximately twelve (12) months. For 2009, the average monthly AR balance (net of inter-company receivables/and net of the Tamarack and Renaissance receivables) has been $6,349,174, with a high of $7,094,130 and a low of $6,250,623 in April, 2009. Based on current operations, I do not believe the receivables balances will decline in any significant amount during the period of requested use of cash. Therefore, in my opinion the dollar reduction in accounts receivable should be disregarded as minimal.

15. **Summary**. In summary, the following is the potential reasonably foreseeable erosion in the value of Textron's cash collateral position which might result from the requested use of the cash collateral for the 28-day period:

Page 10 of 12 - DECLARATION OF LAWRENCE A. TEUFEL SUPPORT OF DEBTOR'S MOTION FOR INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL REGARDING ASSET VALUES AND POSSIBLE EROSION OF COLLATERAL VALUES

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

| DESCRIPTION | AMOUNT |
|---|---|
| Cash | $92,027.00 |
| Real Estate | $0.00 |
| Equipment | $7,100.00 |
| Inventory | $16,979.00 |
| Accounts Receivable | $0.00 |
| Maintenance Division | $0.00 |
| TOTAL: | $116,106.00 |

15.1    Based on its equity cushion of approximately $12,775,000 (net collateral value of $18,075,223 minus Textron's debt of $5,300,000), my opinion is that Textron is adequately protected by its equity cushion (of 241%) for any reasonably projected possible erosion of collateral value ($116,106) for use of the cash collateral.

**TEXTRON'S REVIEW OF TEFUEL'S FINANCIAL INFORMATION**

In the time since Textron first extended credit to Teufel, Textron conducted audits on an approximately quarterly basis. During the audits, Textron had complete and unfettered access to Debtor's job files that included copies of the actual invoices for work performed. At no time did Teufel ever hide or obscure its billing practices from Textron. Although Textron did raise concerns at times with respect to the estimated billing practices at Teufel, Textron continued to extend credit on the basis of Teufel's borrowing base certificates. A number of times, Textron raised the percentage of the borrowing base that Teufel was allowed to borrow against during the life of the loan.

/ / /

/ / /

/ / /

**Page 11 of 12** - DECLARATION OF LAWRENCE A. TEUFEL SUPPORT OF DEBTOR'S MOTION FOR INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL REGARDING ASSET VALUES AND POSSIBLE EROSION OF COLLATERAL VALUES

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

I hereby declare that the above statements are true to the best of my knowledge and belief and that I understand the above statements are made for use as evidence in Court and are subject to penalty for perjury.

Dated this 21st  day of August, 2009.

<pre>
    /s/ Lawrence A. Teufel
</pre>
Lawrence A. Teufel
Declarant

**Page 12 of 12** - DECLARATION OF LAWRENCE A. TEUFEL SUPPORT OF DEBTOR'S MOTION FOR INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL REGARDING ASSET VALUES AND POSSIBLE EROSION OF COLLATERAL VALUES

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Teufel Nursery, Inc
Accounts Receivable Analysis
(Brian Allen's low values with correction to eliminate double deduction
for Lien Adjustment)

|   | A | B | C | D | E |
|---|---|---|---|---|---|
| 1 | ACCOUNTS RECEIVABLE | | Scenario Two | | Notes/Explanation |
| 2 | | | | | |
| 3 | Brian Allen's Type Two Gross Value | | 3,556,400.00 | | |
| 4 | Brian Allen's Type One Gross Value | | 3,074,090.00 | | |
| 5 | Brian Allen's Gross Collectible A/R | | 6,630,490.00 | | [3,556,400 + 3,074,490 = $6,630,490] |
| 6 | | | | | |
| 7 | Brian Allen's Lien Adjustment Total: | | 1,485,735.00 | | |
| 8 | Lien adjust pro-rata share of Type One | | 54% | | [3,556,440 ÷ 6,630,490 = .54] |
| 9 | Lien adjust pro-rata share of Type Two | | 46% | | [3,074,090 ÷ 6,630,490 = .46] |
| 10 | | | | | |
| 11 | | | | | |
| 12 | **Brian Allen's Type 1  Valuation - (90%+ completed):** | | | | |
| 13 | | | | | |
| 14 | Brian Allen's Type One Gross Value | | 3,556,400.00 | | |
| 15 | less pro-rata lien adjustment (54%) | | (802,296.90) | | [1,485,735 x .54 = 802,296.90] |
| 16 | Recoverable Type 1 A/R | | 2,754,103.10 | | |
| 17 | Brian Allen's average projected recovery rate for Type 1 (low rate) | | x .68 | | [Brian Allen low case # / Gross Collectable A/R = % of Net Collectible A/R]  [2,418,143 ÷ 3,556,400 = .68] |
| 18 | Brian Allen's Net Recoverable Value (68% of Type 1 Recoverable A/R) | | 1,872,790.11 | | |
| 19 | | | | | |
| 20 | | | | | |
| 21 | **Brian Allen's Type 2  Valuation - (less than 90% complete):** | | | | |
| 22 | | | | | |
| 23 | Brian Allen's Type Two Gross Value | | 3,074,090.00 | | |
| 24 | less pro-rata lien adjustment (46%) | | (683,438.10) | | [1,485,735 x .46 = 683,438.10] |
| 25 | Recoverable Type 1 A/R | | 2,390,651.90 | | |
| 26 | Brian Allen's average projected recovery rate for Type 2 (low rate) | | x .24 | | [Brian Allen low case # / Gross Collectable A/R = % of Net Collectible A/R]  [742,891 ÷ 3,074,090 = .24] |
| 27 | Brian Allen's Net Recoverable Value (24% of Type 2 Recoverable A/R) | | 573,756.46 | | |
| 28 | | | | | |
| 29 | | | | | |
| 30 | | | | | |
| 31 | Brian Allen's Total Value - Type One + Type Two | | **2,446,546.56** | | [1,872,790.11 + 573,756.46 = 2,446,546.56] |
| 32 | | | | | |
| 33 | Brian Allen number before correction: | | 1,675,299.00 | | |
| 34 | Brian Allen's understatement of A/R value: | | 771,247.56 | | [2,446,546.56 - 1,675,299.00 = 771,247.56 |

Teufel Nursery, Inc
Accounts Receivable Analysis
(Brian Allen's high values with correction to eliminate double deduction
for Lien Adjustment)

|   | A | B | C | D | E |
|---|---|---|---|---|---|
| 1 | ACCOUNTS RECEIVABLE | | Scenario One | | Explanation |
| 2 | | | | | |
| 3 | Brian Allen's Type Two Gross Value | | 3,556,400.00 | | |
| 4 | Brian Allen's Type One Gross Value | | 3,074,090.00 | | |
| 5 | Brian Allen's Gross Collectible A/R | | 6,630,490.00 | | [3,556,400 + 3,074,490 = $6,630,490] |
| 6 | | | | | |
| 7 | Brian Allen's Lien Adjustment Total: | | 1,485,735.00 | | |
| 8 | Lien adjust pro-rata share of Type One | | 54% | | [3,556,440 ÷ 6,630,490 = .54] |
| 9 | Lien adjust pro-rata share of Type Two | | 46% | | [3,074,090 ÷ 6,630,490 = .46] |
| 10 | | | | | |
| 11 | | | | | |
| 12 | **Brian Allen's Type 1 Valuation - (90%+ completed):** | | | | |
| 13 | | | | | |
| 14 | Brian Allen's Type One Gross Value | | 3,556,400.00 | | |
| 15 | less pro-rata lien adjustment (54%) | | (802,296.90) | | [1,485,735 x .54 = 802,296.90] |
| 16 | Recoverable Type 1 A/R | | 2,754,103.10 | | |
| 17 | Brian Allen's average projected recovery rate for Type 1 | | x .78 | | [Brian Allen high case # / Gross Collectable A/R = % of Net Collectible A/R] [2,766,826 ÷ 3,556,400 = .78] |
| 18 | Brian Allen's Net Recoverable Value (78% of Type 1 Recoverable A/R) | | 2,148,200.42 | | |
| 19 | | | | | |
| 20 | | | | | |
| 21 | **Brian Allen's Type 2 Valuation - (less than 90% complete):** | | | | |
| 22 | | | | | |
| 23 | Brian Allen's Type Two Gross Value | | 3,074,090.00 | | |
| 24 | less pro-rata lien adjustment (46%) | | (683,438.10) | | [1,485,735 x .46 = 683,438.10] |
| 25 | Recoverable Type 1 A/R | | 2,390,651.90 | | |
| 26 | Brian Allen's average projected recovery rate for Type 2 | | x .38 | | [Brian Allen high case # / Gross Collectable A/R = % of Net Collectible A/R] [1,171,032 ÷ 3,074,090 = .38] |
| 27 | Brian Allen's Net Recoverable Value (38% of Type 2 Recoverable A/R) | | 908,447.72 | | |
| 28 | | | | | |
| 29 | | | | | |
| 30 | | | | | |
| 31 | Brian Allen's Total Value - Type One + Type Two | | **3,056,648.14** | | [2,148,200.42 + 908,447.72 = 3,056,648.14] |
| 32 | | | | | |
| 33 | Brian Allen number before correction: | | 2,452,123.00 | | |
| 34 | Brian Allen's understatement of A/R value: | | 604,525.14 | | [3,056,648.14 - 2,452,123.00 = 604,525.14 |

Teufel Nursery, Inc
Accounts Receivable Analysis
(Brian Allen's high values with correction to eliminate double deduction
for Lien Adjustment and correction by Larry Teufel re: projected Type 2 recovery rate)

|    | A | B | C | D | E |
|----|---|---|---|---|---|
| 1  | ACCOUNTS RECEIVABLE | | Scenario One | | Explanation |
| 2  | | | | | |
| 3  | Brian Allen's Type Two Gross Value | | 3,556,400.00 | | |
| 4  | Brian Allen's Type One Gross Value | | 3,074,090.00 | | |
| 5  | Brian Allen's Gross Collectible A/R | | 6,630,490.00 | | [3,556,400 + 3,074,490 = $6,630,490] |
| 6  | | | | | |
| 7  | Brian Allen's Lien Adjustment Total: | | 1,485,735.00 | | |
| 8  | Lien adjust pro-rata share of Type One | | 54% | | [3,556,440 ÷ 6,630,490 = .54] |
| 9  | Lien adjust pro-rata share of Type Two | | 46% | | [3,074,090 ÷ 6,630,490 = .46] |
| 10 | | | | | |
| 11 | | | | | |
| 12 | **Brian Allen's Type 1 Valuation - (90%+ completed):** | | | | |
| 13 | | | | | |
| 14 | Brian Allen's Type One Gross Value | | 3,556,400.00 | | |
| 15 | less pro-rata lien adjustment (54%) | | (802,296.90) | | [1,485,735 x .54 = 802,296.90] |
| 16 | Recoverable Type 1 A/R | | 2,754,103.10 | | |
| 17 | Brian Allen's average projected recovery rate for Type 1 | | x .78 | | [Brian Allen high case # / Gross Collectable A/R = % of Net Collectible A/R] [2,766,826 ÷ 3,556,400 = .78] |
| 18 | Brian Allen's Net Recoverable Value (78% of Type 1 Recoverable A/R) | | 2,148,200.42 | | |
| 19 | | | | | |
| 20 | | | | | |
| 21 | **Brian Allen's Type 2 Valuation - (less than 90% complete):** | | | | |
| 22 | | | | | |
| 23 | Brian Allen's Type Two Gross Value | | 3,074,090.00 | | |
| 24 | less pro-rata lien adjustment (46%) | | (683,438.10) | | [1,485,735 x .46 = 683,438.10] |
| 25 | Recoverable Type 1 A/R | | 2,390,651.90 | | |
| 26 | Larry Teufel's average projected recovery rate for Type 2 | | x .75 | | |
| 27 | Larry Teufel's Net Recoverable Value (75% of Type 2 Recoverable A/R) | | 1,792,988.93 | | |
| 28 | | | | | |
| 29 | | | | | |
| 30 | | | | | |
| 31 | Larry Teufel's Total Value - Brian Allen's Type One + Larry Teufel's Type Two | | **3,941,189.34** | | [2,148,200.42 + 1,792,988.93 = 3,941,189.34] |
| 32 | | | | | |
| 33 | | | | | |
| 34 | Brian Allen number before correction: | | 2,452,123.00 | | |
| 35 | Brian Allen's understatement of A/R value: | | 1,489,066.34 | | [3,941,189.34 - 2,452,123.00 = 1,489,066.34] |

In re  Teufel Nursery, Inc.;
Chapter 11 Bankruptcy Case No. 09-34880-elp11

CERTIFICATE - TRUE COPY

DATE: August 21, 2009

DOCUMENT: DECLARATION OF LAWRENCE A. TEUFEL IN SUPPORT OF DEBTOR'S MOTION FOR INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL REGARDING ASSET VALUES AND POSSIBLE EROSION OF COLLATERAL VALUES

I hereby certify that I prepared the foregoing copy of the foregoing named document and have carefully compared the same with the original thereof and it is a correct copy therefrom and of the whole thereof.

CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing on:

| | | |
|---|---|---|
| Teufel Nursery, Inc.<br>Attn:  Larry Teufel<br>100 SW Miller Rd.<br>Portland, OR  97225 | IKON Financial Services<br>Recovery & Bankruptcy Group<br>3920 Arkwright Road, Ste. 400<br>Macon, GA 31210 | Ky Fullerton<br>Umpqua Holdings Corporation<br>1 S.W. Columbia Street, Suite 1400<br>Mail Code 030-14-SPAD<br>Portland, Oregon 97258 |
| Christopher J. Kayser<br>LARKINS VACURA LLP<br>621 SW Morrison St., Ste. 1450<br>Portland, OR  97205 | TriMet<br>Attn:  Tamara Lesh<br>Deputy General Counsel<br>710 NE Holladay Street<br>Portland, OR 97232 | Recovery Management Systems Corporation<br>25 SE 2nd Avenue, Suite 1120<br>Miami, FL 33131 |
| Bankruptcy Administration<br>IKON Financial Services<br>1738 Bass Road<br>P. O. Box 13708<br>Macon, GA 31208-3708 | | |

by mailing a copy of the above-named document to each of them in a sealed envelope, addressed to each of them at his or her last known address.  Said envelopes were deposited in the Post Office at Portland, Oregon, on the below date, postage prepaid.

The following were served electronically by the Court:

U.S. Trustee
Leo D. Plotkin
Richard J. Parker
Jan D. Sokol

Dated:  August 21, 2009

VANDEN BOS & CHAPMAN, LLP

By:/s/Robert J Vanden Bos
    Robert J Vanden Bos, OSB #78100
    Of Attorneys for Debtor-in-Possession